UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
WESTERN DIVISION

| | |
|---|---|
| MELAINE WILSON,<br>Plaintiff<br><br>vs.<br><br>OGLALA SIOUX TRIBE<br>ELECTION COMMISSION,<br>Defendant | 5:22-cv-5095<br><br>MEMORANDUM<br>OPINION AND<br>ORDER |

Pending before the Court is Plaintiff's lawsuit against the Oglala Sioux Tribe Election Commission, alleging that the Oglala Sioux Tribal Council permitted the Commission to break certain rules governing elections. (Doc. 1, PgID 1). Plaintiff also has moved for in forma pauperis status, (Doc. 2), and the appointment of counsel. (Doc. 3).

## I. Motion for Leave to Proceed In forma Pauperis

28 U.S.C. §1915(a)(1) directs the court to authorize the commencement of a civil action without prepayment of fees upon proof of plaintiff's inability to pay. A person may be permitted to proceed in forma pauperis if he or she "submits an affidavit that includes a statement of all assets" the person possesses, and also states "that the person is unable to pay such fees or give security therefore." *Id.*

1

The Eighth Circuit has established parameters for addressing in forma pauperis motions and has instructed that a petitioner's financial status should be evaluated first, and screening under 28 U.S.C. § 1915 should follow. *Martin-Trigona v. Stewart*, 691 F.2d 856, 857 (8th Cir. 1982). The court has recognized that the applicant need not establish "absolute destitution." *Lee v. McDonald's Corp.*, 231 F.3d 456, 459 (8th Cir. 2000). See also *Babino v. Janssen & Son*, 2017 WL 6813137, at *1 (D.S.D. 2017). The District Court's task is to determine whether the plaintiff's allegation of poverty is true, and that determination is within the court's discretion. *Lee*, 231 F.3d at 459.

Plaintiff has submitted sufficient documentation to establish that she should be permitted to proceed in forma pauperis. In her declaration, Ms. Wilson indicates she currently has income in the form of military retirement and disability payments, minimal assets, and significant housing expenses. (Doc. 2). The Court finds Ms. Wilson is indigent within the meaning of §1915(a)(1). The Court notes this is consistent with its determination of in forma pauperis status for Plaintiff in 5:22-cv-5091. This determination means her claims will be screened under 28 U.S.C. § 1915(e).

## II. Screening pursuant to 28 U.S.C. § 1915(e)

### A. Legal Standard

A proceeding in forma pauperis is governed by 28 U.S.C. §1915(e)

2

which provides:

> (2) Notwithstanding any filing fee . . . the court shall dismiss the case at any time if the court determines that-- . . .
>     (B) the action or appeal—
>     (i) is frivolous or malicious;
>     (ii) fails to state a claim on which relief may be granted; or
>     (iii) seeks monetary relief against a defendant who is immune from such relief.

28 U.S.C. § 1915(e)(2).

This provision allows the court sua sponte to review a complaint filed with an in forma pauperis application to determine if the action warrants dismissal. In screening plaintiff's pro se complaint, the court must liberally construe it and assume as true all facts well pleaded in the complaint. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Even with this construction, "a pro se complaint must contain specific facts supporting its conclusions." *Martin v. Sargent*, 780 F.2d 1334, 1337 (8th Cir. 1985). To state a claim for relief, a complaint must plead more than "legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action's elements, supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). A reviewing court has the duty to examine a pro se complaint "to determine if the allegations provide for relief on any possible theory." *Williams v. Willits*, 853 F.2d 586, 588 (8th Cir. 1988). A plaintiff must demonstrate a plausible claim for relief,

3

that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 675. If it does not contain these bare essentials, dismissal is appropriate. The court is not required to construct legal theories for the plaintiff to enable the case to proceed. *Marglon v City of Sioux Falls Police Dept.*, 2020 WL 906521, *2 (D.S.D. 2020) (citing *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004)).

## B. Plaintiff's allegations

Plaintiff names a single defendant in her lawsuit: the Oglala Sioux Tribe Election Commission. (Doc. 1, PgID 1). Her complaint is broader, however, and seeks an investigation and prosecution by the Department of Interior for "civil rights abuse" based on her allegation the Tribal Council allowed the Election Commission "to break rules, such as Challenge Votes and using pencils," thus making it "appear that there is fraud happening with our votes." (Id.) In addition, she asserts the Commission uses the Enrollment Office "to verify address on Challenge votes meaning all enrolled members can vote without residency requirements by OST Constitution." (Id.). She asks for an initial vetting process to be sure those running for office know they are subject to the Bureau of Indian Affairs and Oglala Sioux Tribe Uniform Commercial Codes. (Id., PgID 3). She wants "transparency of votes as they are supposed to be" and "not with pencils and

4

challenge votes of enrolled members who aren't even living on the reservation." (Id.).

Plaintiff supplies documentation from the Department of Interior Office of Inspector General on November 16, 2022, indicating receipt of Plaintiff's email invoking the Fort Laramie Treaty of 1868. (Doc. 1-1, PgID 6). The email apparently refers to Plaintiff's complaint to that office and several others, including the Federal Bureau of Investigation, on 15 November 2022. (Id., PgID 7). This complaint is a document asking that Bureau of Indian Affairs Realty workers be punished by the Department of Interior and have their enrollments dissolved, lose federal benefits, and have their beneficiaries disenrolled, apparently because of alleged misconduct on their part. (Id., PgID 7-10). She offers a copy of the Fort Laramie Treaty of 1868. (Doc. 1-1, PgID 14-25). She names various positions at the tribe as being subject to the authority of the United States under the treaty, presumably for misconduct. (Doc. 1-1, PgID 8-9). Among her many demands is a demand for various documents, a land audit, monthly incomes, and a great deal more. (Id. PgID 9-10). She includes a letter to President Biden asking for a land audit. (Id., PgID 12).

Plaintiff asserts a $55 Billion lien against the Oglala Sioux Tribe Election Committee, and also against the Government Accountability Office, Department of

5

Interior, Bureau of Indian Affairs, and the South Dakota counties of Oglala, Jackson and Bennett. (Doc. 1-3). She seeks information about "638" contracts.

Plaintiff includes a complaint about the Oglala Sioux Tribe Election Commission to the Department of Interior Office of Inspector General, dated September 23, 2022. (Doc. 1-4, PgID 35). She also includes a complaint from James Adams about the 2022 election dated December 2, 2022. (Id., PgID 38). His complaint of November 17, 2022, about the Election Commission is also included. (Doc. 1-5).

## C. Analysis

At the threshold, many restrictions on federal court intervention in the internal affairs of tribes are firmly in place. See, e.g., *Sac & Fox Tribe of the Mississippi in Iowa, Election Board v. Bureau of Indian Affairs*, 439 F. 3d 832, 835 (8th Cir. 2006) (noting that jurisdiction to resolve "internal tribal disputes" is in the tribe and not in federal district court); *Wright v. Langdeau*, 158 F.Supp.3d 825, 836 (D.S.D. 2016); *Montgomery v. Flandreau Santee Sioux Tribe*, 2006 WL 482479, *5 (D.S.D. 2006). Tribal law and policy are matters to be determined by the tribe in the first instance. *Sac & Fox Tribe*, 439 F.3d at 835. Therefore, when an individual tribal member seeks federal court intervention in what appears to be a matter of internal tribal policy, the court proceeds with caution. As one court recently explained, federal question jurisdiction is not created simply because "a

6

case involves an Indian party or contract or tribal or individual Indian property, or ... arises in Indian country." *Whalen v. Oglala Sioux Tribe Executive Officers*, 2021 WL 4267654, *2 (D.S.D. 2021) (quoting COHEN'S HANDBOOK OF FEDERAL INDIAN LAW § 7.04[1][a] (Nell Jessup Newton ed., 2012)). In this case, Plaintiff's lawsuit must be dismissed for at least two reasons: tribal sovereign immunity and standing, as discussed below.

1. Tribal Sovereign Immunity

Tribal sovereign immunity has been recognized as a significant aspect of tribes' status as sovereigns. *Michigan v. Bay Mills Indian Community*, 572 U.S. 782, 788 (2014); *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 58 (1978) (holding that tribes possess "common-law immunity from suit traditionally enjoyed by sovereign powers"). This immunity is viewed as "a necessary corollary to Indian sovereignty and self-governance." *Bay Mills,* 572 U.S. at 788 (quoting *Three Affiliated Tribes of Fort Berthold Reservation v. Wold Engineering, P.C.*, 476 U.S. 877, 890 (1986)). Suits may be brought against tribes if the tribe waives its immunity or Congress abrogates it. *Okla. Tax Comm'n v. Citizen Band Potawatomi Indian Tribe of Okla.*, 498 U.S. 505, 509 (1991); *Stanko v. Oglala Sioux Tribe*, 916 F.3d 694, 696 (8th Cir. 2019) (citing *Amerind Risk Mgmt. Corp. v. Malaterre*, 633 F.3d 680, 685 (8 Cir. 2011)). Any waiver of tribal sovereign

7

immunity must be "unequivocal." *Rupp v. Omaha Indian Tribe*, 45 F.3d 1241, 1244 (8th Cir. 1995).

In the context of a lawsuit brought in federal court, "sovereign immunity is a jurisdictional question." *Rupp*, 45 F.3d at 1244 (citing *Puyallup Tribe, Inc. v. Washington Game Dep't*, 433 U.S. 165, 172 (1977)). The upshot is that, if the Tribe possesses sovereign immunity, the district court "has no jurisdiction." *Puyallup*, 433 U.S. at 172; *Rupp*, 45 F.3d at 1244. Furthermore, a federal court must assess whether it has jurisdiction as a threshold matter in every case. *Oglala Sioux Tribe v. Schwarting*, 894 F.Supp.2d 1195, 1198 (8th Cir. 2012) (quoting *Hart v. United States*, 630 F.3d 1085, 1089 (8th Cir. 2011)).

Plaintiff's claim is against the Oglala Sioux Tribe Election Commission. There does not appear to be any dispute that the Commission is a subdivision of the Oglala Sioux Tribe's government. The election commission was recently acknowledged as an "independent regulatory agency of the [Oglala Sioux Tribe] that is responsible for overseeing the election process as provided in th[e] Election Code." *Whalen*, 2021 WL 4267654, *3 (D.S.D. 2021) (quoting OST Election Code, Ordinance No. 20-13, § 4). When members of the election Commission oversee the election process, they act in their official capacities. *Id.* As a result, because the Commission is an arm of the government of the Oglala Sioux Tribe, if the Tribe is immune from suit, the Election Commission is as well. See, e.g.,

8

*Hagen v. Sisseton-Wahpeton Cmty. Coll.*, 205 F.3d 1040, 1043 (8th Cir. 2000) (immunity extended to tribal college); *Stathis v. Marty Indian School Board Inc.*, 560 F.Supp.3d 1283, 1291 (D.S.D. 2021) (noting that "a tribe's sovereign immunity may extend to a tribal entity or agency"). As the Eighth Circuit has held, both tribal elections and disputes about the elections are "key facets of internal tribal governance." *Attorney's Process and Investigation Servs., Inc. v. Sac & Fox Tribe of Miss. in Iowa*, 609 F.3d 927, 943 (8th Cir. 2010). This means they are within the "exclusive jurisdiction" of tribal governing bodies. *Id.*

In this case, the Court determines it lacks jurisdiction to entertain Plaintiff's lawsuit against the Oglala Sioux Tribe Election Commission. The Commission is an arm of the Oglala Sioux Tribal government and enjoys sovereign immunity unless Congress has abrogated the immunity or the tribe has waived it in the context of this lawsuit. The Court is aware of no such abrogation or waiver and Plaintiff supplies no evidence of either. The sovereign immunity of the Oglala Sioux Tribe remains in place with respect to this lawsuit, meaning this Court lacks subject matter jurisdiction. The Court has the authority under Rule 12(h) to dismiss before service if the Court lacks subject matter jurisdiction. Fed. R. Civ. P. 12(h). See *Goodface v. Lower Brule Sioux Tribe 2020 Election Board*, 2020 WL 5017352, *1 (D.S.D. 2020) (citing *Evans v. Suter*, 2010 WL 1632902, *1 (D.D.C.

2010) (collecting cases)). Therefore, Plaintiff's claims are dismissed for lack of jurisdiction.

2. Standing

The United States Supreme Court has set forth the requirements for Article III standing in numerous cases. The "irreducible constitutional minimum of standing" is that a plaintiff must have suffered an "injury in fact," meaning, invasion of a legally protected interest; "there is a causal connection between the injury and the conduct complained of"; and the injury can be "redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S. Ct. 2130, 2136, 119 L.Ed.2d 351 (1992) (cleaned up). See also *Department of Commerce v. New York*, ___ U.S. ___, 139 S. Ct. 2551, 2565, 204 L.Ed.2d 978 (2019) (in a dispute over a citizenship question on the 2020 census, states had standing, given the potential impact on their representation in Congress). As numerous courts have held, if a plaintiff lacks standing, the district court does not have subject matter jurisdiction. *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 79 (2013). See also *Faibisch v. University of Minnesota*, 304 F.3d 797, 801 (8th Cir. 2002) (reversed on other grounds); *Yankton Sioux Tribe v. U.S. Army Corps of Engineers,* 2005 WL 2429799, *2 (D.S.D. 2005).]

In addressing a challenge to tribal election procedures, the Eighth Circuit reiterated its "obligation" to examine standing, and cited its formulation of the rule

that "a plaintiff must have suffered an injury in fact that is fairly traceable to the defendant's challenged action, and it must be likely that the injury will be redressed by a favorable judicial decision." *Cross v. Fox*, 23 F.4th 797, 800 (8th Cir. 2022) (quoting *Hawse v. Page*, 7 F.4th 685, 688 (8th Cir. 2021)). The court added that "a 'generalized grievance' does not count as an Article III injury." *Id.* (citing *Carney v. Adams,* 592 U.S. ___, 141 S,Ct. 493, 499 (2020)). The court concluded the plaintiff lacked standing to challenge a tribal residency requirement for public office because he did not allege that he intended to pursue an office. *Id.*

In the case at bar, Plaintiff challenges the use of pencils, handling of challenge votes, and administration of residency requirements. She supplies no information about any specific injury to her while voting or in the context of an election. Her allegations are not limited to those relevant to the work of the Election Commission, given her allegations against Bureau of Indian Affairs Realty workers. Plaintiff has submitted a lengthy list of generalized grievances and has failed to allege a plausible injury in fact by Defendants that is redressable by this Court. The Court finds Plaintiff lacks standing in this action, which deprives the Court of jurisdiction. Therefore, Plaintiff's claims are dismissed.

**Conclusion**

Plaintiff's challenge to the conduct of elections by the Oglala Sioux Tribe Election Commission is a matter to be handled internally at the tribal level and not

11

by a federal court. The Oglala Sioux Tribe's sovereign immunity extends to its Election Commission, and immunity from suit has not been abrogated by Congress or waived by the Tribe. Therefore, Plaintiff's lawsuit is barred. Furthermore, Plaintiff's generalized grievances about the Oglala Sioux Tribe's elections do not confer standing on her. Therefore, pursuant to the screening mandated by 28 U.S.C. § 1915(e), Plaintiff's complaint is dismissed.

Accordingly, IT IS ORDERED:

1. That Plaintiff's motion for in forma pauperis status is granted, (Doc. 2);
2. That Plaintiff's complaint is dismissed without prejudice, (Doc. 1);
3. That Plaintiff's motion for appointment of counsel is denied as moot, (Doc. 3).

Dated this 13th day of June, 2023.

BY THE COURT:

Lawrence L. Piersol
United States District Judge

ATTEST:
MATTHEW W. THELEN, CLERK